425 So.2d 1222 (1983)
STATE of Louisiana
v.
Romela Grace TRAHAN and Max Dennis Leleaux.
No. 82-KA-0423.
Supreme Court of Louisiana.
January 10, 1983.
Rehearing Denied February 11, 1983.
*1223 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Dist. Atty., Eugene Bouquet, Larry Regan, Wayne Frey, Asst. Dist. Attys., for plaintiff-appellee.
D. Michael Mooney, Lake Charles, for defendants-appellants.
WATSON, Justice.
Defendants, Romela Grace Trahan and Max Dennis Leleaux, were both convicted of possession of marijuana with intent to distribute, LSA-R.S. 40:967 A(1),[1] and possession of cocaine, LSA-R.S. 40:967 C.[2] Romela Grace Trahan was sentenced to serve seven years at hard labor for possession of marijuana with intent to distribute and three consecutive years at hard labor for possession of cocaine. Max Dennis Leleaux was sentenced to serve four years at hard labor for possession of marijuana with intent to distribute and four concurrent years at hard labor for possession of cocaine.

FACTS
Two Calcasieu Parish Sheriff's Deputies received a tip about marijuana sales at a trailer from an anonymous informant. They verified the trailer's location and description. An affidavit sworn at 11:48 P.M. on February 29, 1981, stated:
"[C]ertain large quantities of Marijuana can be found in a gold and white trailer which is located on the west side of Arizona Street, one mile south of the intersection of Patton and Arizona Streets and is the second residence north of the intersection of Sunny Wood Drive and Arizona Street and is directly across the street from the Overflow Machine Shop and there is a large sign advertising West Point Barber Shop in the front yard. The trailer faces east and west with the front door facing south and there is a silver Chevrolet Van in the yard. This residence is occupied by Ramola (sic) Trahan, a white female, and a white male by the name of Max who is in his twenties, 5'11", 145 pounds, black hair and beard. This department has been receiving information on these people for the past several months that they are dealing in large quantities of Marijuana. This information has been received from reliable informants *1224 who have told this Department the above. These informants' information has been checked out by other reliable informants and has been proven true and reliable. On this date, Tuesday, February 24, 1981, a reliable informant who has been given (sic) this Department information for approximately the past four months and his information in the past has been checked out by other reliable informants and undercover agents and has proven to be true and reliable. This informant's information in the past has resulted with this Department's undercover agents being able to make several felony narcotic buys based on his information. This informant advised this Department within the past six (6) hours that he had been in the above described trailer and had personally seen large quantities of Marijuana in the rear bedroom of the trailer described above and that Ramola (sic) Trahan and Max were in the trailer and while he was there, a white male who he did not know or recognize came in and purchased a pound of Marijuana. The purpose of this Search Warrant is to obtain evidence which is needed in the criminal prosecution of Ramola (sic) Trahan and Max for the violation of Louisiana Revised Statute 40:967A(1)." (Tr. 53)
At 12:17 A.M. on February 25, 1981, the warrant was served on defendants Leleaux and Trahan, who were in their trailer. The two were arrested. Among the items seized from the trailer were: approximately one and three-quarters pounds of marijuana, part of it packaged in seventeen plastic bags; drug paraphernalia, including pipes, cigarette papers, clips, weighing scales and other devices for smoking, rolling, packaging and measuring marijuana; a bottle of "Sparkling Beauty", a white Mannitol powder commonly used to cut cocaine; twentyeight Polaroid photographs; a small vial or bottle, one-half to an inch in size, which had a slight residue of cocaine. The amount of cocaine was too small to be weighed and was consumed in the laboratory testing. The vial itself disappeared before trial. Much of the marijuana seized was in the bedroom where the informant said he witnessed a sale.

ASSIGNMENT OF ERROR NUMBER ONE
Defendants' motion to suppress the evidence was denied. Defendants argue that the affidavit in support of the warrant fails to establish probable cause to believe that the informant had recently been in defendants' trailer.
The pertinent language in the affidavit is:
"... This informant advised this Department within the past six (6) hours that he had been in the above described trailer...." (Tr. 53)
Defendant argues that this language could mean that the Department had been notified within six hours but the informant was in the trailer at some distant point in time.[3] Thus, it is claimed that the information could have been stale. However, the judge who signed the search warrant could have reasonably inferred that the informant observed the marijuana transaction within six hours prior to execution of the affidavit.[4] See State v. Turner, 337 So.2d 1090 (La., 1976)
"... [A]ffidavits for search warrants ... must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity... have no proper place in this area." U.S. v. Ventresca, 380 U.S. 102 at 108, 85 S.Ct. 741 at 745, 13 L.Ed. 684 at 689 (1965) as quoted by the Louisiana Supreme Court in State v. Mena, 399 So.2d 149 at 152 (La., 1981).
*1225 Because of the promptness with which the deputies acted on the informant's tip, it was probable that the contraband was still there. State v. Segers, 355 So.2d 238 (La., 1978) and State v. Boudreaux, 304 So.2d 343 (La., 1974). Compare State v. Thompson, 354 So.2d 513 (La., 1978) and State v. Lewis, 385 So.2d 226 (La., 1980).
The totality of the information in this affidavit establishes probable cause for a search warrant.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendants contend the trial court erred in admitting twenty-one photographs into evidence over a defense objection.[5] The undated photographs were found on a bookshelf in defendants' living room. They showed Max Leleaux and others smoking cigarettes and using smoking paraphernalia similar to that introduced into evidence. Although admitted into evidence, the photographs were never seen by the jury.
Defendant argues that the state failed to provide written notice of its intent to use the photographs as evidence of prior crimes. State v. Goza, 408 So.2d 1349 (La., 1982); State v. Prieur, 277 So.2d 126 (La., 1973); LSA-R.S. 15:445, 446. This notice requirement safeguards against the danger that a defendant may be unprepared to defend himself against unknown charges.
The only reference to the photographs was by Leleaux, who took the stand, admitted to use of marijuana, said the photographs were his and explained they were taken a year or two earlier in Mississippi. Although the state did not follow the notice requirements of Prieur, supra, the error in admitting the photographs was harmless, because they were never shown to the jury. The photographs were not used in such a prejudicial manner as to require reversal of defendant's conviction.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendants argue that the verdicts rendered are contrary to the law and the evidence.
Viewing the evidence in the light most favorable to the prosecution, could a rational trier of fact have found beyond a reasonable doubt proof of each element of the crimes? Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Leleaux rented the trailer in his name, but Romela Grace Trahan also lived there. They were both present at the time of the raid. Marijuana was found in quantity in the bedroom, living room and kitchen. Because of the abundance and distribution of the marijuana in the trailer, there is no question that the defendants had possession.
Intent to distribute may be inferred from the circumstances. LSA-R.S. 15:445. The one and three quarters pounds of marijuana seized was partially packaged in seventeen plastic baggies. An expert witness, Francis Touchet, testified that this amount would make approximately 1,600 cigarettes, a number inconsistent with possession for personal use.[6]State v. Tornabene, 337 So.2d 214 (La., 1976). Compare State v. Elzie, 343 So.2d 712 (La., 1977); State v. Greenway, 422 So.2d 1146 (La., 1982); State v. House, 325 So.2d 222 (La., 1975). The other drug paraphernalia such as scales also indicates that defendants possessed with intent to distribute.
There was certainly sufficient evidence to support the convictions for possession of marijuana with intent to distribute.
A more difficult problem is presented concerning the convictions for possession of cocaine. The only evidence was that a small vial containing a residue of cocaine had been found on a bedroom shelf of the trailer which had been rented by Leleaux for two and one-half to three years. He *1226 testified that he knew nothing about the vial or its origin. Neither the small glass vial nor the cocaine was produced at trial. The cocaine was consumed in testing and the vial was lost prior to trial.
The state's witness, Touchet, testified that the actual amount of cocaine was "extremely small" and that he "could not quantitate it." In other words, there was only a trace of cocaine and it could not be measured or weighed.
The jurisprudence has not established precise guidelines as to what constitutes "possession" of drugs under the narcotic laws. Actual physical possession is, of course, sufficient and various cases hold that there may be "constructive possession", when the material is not in the physical possession of a person but is under his dominion and control.
"A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control of it.... [G]uilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug...." State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971).
Determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. State v. Cann, 319 So.2d 396 (La., 1975).
The facts of the present case indicative of control and dominion is the circumstance that the vial was found in the bedroom of the trailer rented by Leleaux for over two and a half years and occupied by the defendant Trahan for an indeterminate length of time. The only evidence bearing on the evidence of guilty knowledge is Leleaux's testimony that he knew nothing about the vial or its contents; Trahan did not testify at trial. Also, the Mannitol, a material for cutting cocaine, was found in the trailer.
The question is whether under Jackson v. Virginia, supra, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that: (1) the defendants had dominion and control over the cocaine; and (2) they knowingly possessed it. There is no difficulty in concluding that the evidence showed beyond a reasonable doubt that Leleaux had dominion and control over the vial. As to Trahan, the conclusion is doubtful. However, the evidence falls short of reflecting guilty knowledge. Leleaux, as noted, disclaimed any knowledge of the vial and its contents and no evidence was produced to show such knowledge. The presence of the cutting substance is not sufficient in itself to prove guilty knowledge. The evidence does not satisfy the Jackson v. Virginia test.
Therefore, the assignment of error has merit as to the conviction for possession of cocaine and the conviction must be set aside.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendants contend their sentences are excessive.[7] LSA-Const., Art. 1, § 20.
The trial court considered certain mitigating factors: Leleaux had led a law abiding life with no prior criminal activity; he supports a minor child; he had been employed at the same job for over three years. His employer wrote a letter asking that Leleaux be allowed a chance of rehabilitation, and offered to assist in probation. However, the court found that Leleaux's drug offenses were of a serious nature, and a threat to the safety of the community. Because of Leleaux's extensive use of illicit drugs for an extended period, he was found to be in need of correctional treatment in a custodial environment.
*1227 The maximum which Leleaux could have received for possession of a controlled dangerous substance with intent to distribute is ten years. Defendant Leleaux admitted to use of marijuana over a long period of time. Four years, less than half the maximum, is not apparently excessive.
Romela Grace Trahan received seven years for possession of marijuana with intent to distribute. She was on probation from a suspended sentence for prior distribution of marijuana at the time of this offense. The court considered a mitigating factor: she is the mother of a small child and the child's sole support. The court recognized that a sentence of confinement will impose an excessive hardship to that child. However, the court noted that any lesser sentence would deprecate the seriousness of her crime. He stated she is in need of correctional treatment in a custodial environment because her prior felony indicated she might commit another crime. The record on considerations met the sentencing guidelines of LSA-C.Cr.P. art. 894.1. State v. Jacobs, 383 So.2d 342 (La., 1980).
A trial judge has wide discretion in imposition of sentences within the statutory limit, if there has been compliance with LSA-C.Cr.P. art. 894.1. Sentences imposed should not be set aside as excessive absent manifest abuse of discretion. State v. Spencer, 374 So.2d 1195 (La., 1979).
Both sentences for possession of marijuana with intent to distribute will be affirmed.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment, defendants argue that the trial court erred in instructing the jury as follows: "An intention to distribute narcotics can be inferred from the quantity in the defendants' possession." (Tr. 80)
Intent can be inferred from the circumstance of a transaction. LSA-R.S. 15:445. An intention to distribute narcotics or other controlled dangerous substances can be inferred from the quantity in the accused's possession. State v. Sibley, 310 So.2d 100 (La., 1975). Compare State v. House, 325 So.2d 222 (La., 1975); State v. Ramoin, 410 So.2d 1010 (La., 1982); and, State v. Greenway, 422 So.2d 1146 (La., 1982). Here, the packaging and scales, as well as the quantity, indicated an intent to distribute.
This assignment lacks merit.
For the foregoing reasons, the convictions and sentences for possession of marijuana with intent to distribute are affirmed.
The convictions and sentences for possession of cocaine are reversed and vacated.
AFFIRMED IN PART; REVERSED IN PART.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
LEMMON, J., dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of the convictions and sentences for possession of marijuana with intent to distribute. I dissent from the reversal of the convictions and sentences for possession of cocaine. Whether the defendants had the requisite guilty knowledge, which is an essential element of the crime of possession of an illegal drug, is a matter of proof by either direct or circumstantial evidence. In the instant case, a vial containing cocaine was found in the possession of defendants. There was also evidence that Mannitol, a material for cutting cocaine, was also in the possession and control of the defendants. Viewing this evidence in the light most favorable to the prosecution, a rationale trier of fact could have found beyond a reasonable doubt that defendants had dominion and control over the cocaine and that they knowingly possessed it. Accordingly, I would affirm the convictions for possession of cocaine.
LEMMON, Justice, dissenting in part.
The trace of cocaine in a small vial on the back of a shelf in a bedroom closet was not, *1228 by itself, sufficient evidence to support a conviction of possession of cocaine. However, the brown bottle of the Italian mannitol (which was discovered by a different officer than the one who found the cocaine in the bedroom closet) casts a different complexion on the presence of a trace of cocaine in the trailer. Moreover, a gram scale, designed to weigh and calibrate powdery, crystalline substances such as cocaine, was also found in the trailer.
Under the overall evidence viewed in the light most favorable to the prosecution, a reasonable juror could have concluded that both Leleaux and Ms. Trahan had guilty knowledge of the cocaine which was under their joint dominion and control. I would affirm the convictions of possession of cocaine.
NOTES
[1] LSA-R.S. 40:967 A(1), at the time of the offense provided:

"A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
"(1) To produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
"(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II."
At the time of the offense, marijuana was contained in Schedule II.
[2] LSA-R.S. 40:967 C, at the time of the offense provided:

"C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner or provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this Part. Except as provided in Subsections E and F hereof, any person who violates this subsection shall be imprisoned with or without hard labor for not more than five years; and, in addition, may be sentenced to pay a fine of not more than five thousand dollars."
At the time of the offense, cocaine was contained in Schedule II.
[3] At the hearing, Deputy Albanese testified that he spoke to the informant at 9:45 P.M.
[4] Leleaux testified at the hearing on the motion to suppress that only friends had been at the trailer that day, and all had denied being the informant. This does not negate the possibility that one of them was the informant.
[5] Seven other photographs were excluded.
[6] Even after removal of the seeds and stems, which the expert said were usable, 800 cigarettes could be made from this amount.
[7] The reversal of the cocaine possession charge has no practical effect on the sentences received by defendants. Leleaux's sentences were made concurrent. Although Trahan's were made consecutive, it could be persuasively argued that the sentences should have been imposed concurrently under LSA-C.Cr.P. art. 883.