513 So.2d 832 (1987)
STATE of Louisiana, Appellee,
v.
Lee JOHNSON, a/k/a Lemah Johnson, Appellant.
No. 18877-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*835 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Johnesboro, for appellant.
William J. Guste, Jr., Atty. Gen., John C. Blake, Dist. Atty., John Michael Ruddick, Asst. Dist. Atty., for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
The defendant Johnson was convicted by a jury of possession of cocaine with intent to distribute (La.R.S. 40:967[A]). He was sentenced to pay a fine of $5000 and serve 12 years in prison.
The defendant appealed his conviction and sentence, reserving numerous assignments of error.
Factual Context
On the night of February 19, 1986 Trooper Pepper of the Louisiana State Police received a telephone call from a confidential informant ("CI") who stated that some cocaine would be arriving the next morning before 9:00 o'clock at the Homer bus station (the parking lot of Keith's Food Mart). The telephone message also reported the cocaine was being transported in a bank bag by a black courier and was to be delivered to one Lee Johnson, who possessed the key to the bank bag.
After checking the bus schedules and learning that a bus was to arrive in Homer at 8:30 A.M. on February 20, 1986, Trooper Pepper and Deputy Williams set up surveillance on Keith's Food Mart at about 8:00 that morning. Around 8:30 A.M. a bus arrived. A few white passengers disembarked but only one black, carrying a duffle bag, got off. He proceeded to a pay telephone and dialed a number. A few minutes later he returned to the pay telephone and began to dial again when Lee Johnson drove up in his pickup truck. The black male got into the truck with his duffle bag.
As Johnson was leaving the parking lot, Trooper Pepper blocked the exit and advised the occupants of the truck he had probable cause to believe they were transporting narcotics. Permission was requested and received from Johnson to search his person and his truck. No contraband was discovered. Written permission was received from the passenger (C.W. Williams) to search the duffle bag.
In searching the duffle bag Trooper Pepper found a bank bag wrapped in white tape. Cutting the tape off, Pepper discovered the lock was closed but had not been zipped completely shut, so that the officer could open the bag. Inside the bank bag was a clear plastic "baggie" wrapped in foil and taped. The "baggie" contained a white powdery substance, later analyzed and determined to be 1½ ounces (42 grams) of cocaine (47%).
While being processed Johnson admitted to ownership of the bank bag, but claimed he had not seen it since a few weeks earlier in Florida. He then produced a key from his key chain that opened the lock on the bag. Johnson was charged with possession of cocaine with intent to distribute.
At the trial, Williams, testifying on behalf of the State, said the defendant had given him the duffle bag and clothes to wear together with a ticket and $10 to go to Florida; that upon arrival at his destination he spent one day at the home of his niece (an acquaintance of defendant) and his niece bought him a bus ticket to Homer; he telephoned Johnson upon arriving in Homer but got no answer and tried again a few minutes later; that while he was dialing again a second time, Johnson drove up; and that defendant's son-in-law told Williams to give the bank bag to defendant.
*836 Trooper Pepper testified that cocaine had a street value of about $125 per gram and that possession of 1½ ounces was inconsistent with personal use. He stated that cocaine was generally packaged in gram quantities of ½, ¼, or 1/8 ounce units.
Argument # 1

Assignment of Error Number 1
The District Court erred, as a matter of law, in denying the defendant's Motion to Suppress.

Assignment of Error Number 6
The District Court erred, as a matter of law, in allowing state Trooper Randall Pepper to testify as to a statement made by and/or information received from a confidential reliable informer.
Since the ruling in Assignment of Error Number 6 would effect a ruling in Number 1, Assignment of Error Number 6 will be addressed first.
Defendant argues that permitting Trooper Pepper to testify as to what the "CI" told him constituted hearsay in derogation of La.R.S. 15:434. This assertion is erroneous. The testimony was offered at the motion to suppress, not to prove the truth of the matter asserted, but rather to show the officer's state of mind regarding the reason he went to the scene of the arrest and his good faith in believing he had probable cause to stop the defendant. The eliciting of this information was necessary at the motion to suppress to show that the arrest met the standards of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). State v. Lard, 459 So.2d 1189, 1192 (La.App. 4th Cir.1984), writ denied, 464 So.2d 1376 (1985); State v. Calloway, 324 So.2d 801 (La.1975). This assignment of error is without merit.
In Assignment of Error Number 1, the defendant asserts that the seized cocaine should not have been admitted because the initial stop was not made pursuant to a valid search warrant. As the Louisiana Supreme Court has stated:
"It is well-settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions." State v. Raheem, 464 So.2d 293, 295 (La.1985).
It proceeded to note that:
"One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to a consent." id., at 297.
There is no question that the bank bag containing the cocaine, and the duffle bag in which it was hidden, were searched only after obtaining the written consent of Williams who had actual possession of the duffle bag. Therefore, the only question is: Did Trooper Pepper have probable cause to stop the defendant? Trooper Pepper announced to the defendant and Williams that he had "probable cause" to stop them. "Probable cause to arrest without a warrant exists when the facts and circumstances within the officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." State v. Ruffin, 448 So.2d 1274, 1277 (La.1984); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
The standard informant cases for determining probable cause flow from Illinois v. Gates, supra. In Gates, the Supreme Court replaced the mechanical "two-pronged test" of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) with a "totality of the circumstances" test. The Gates court did not denigrate the importance of the two prongs of the test, i.e., reliability of the informant and the basis of his information, but allowed an abundance of one to compensate for lack of the other. Therefore, the question becomes: Did Trooper Pepper have probable cause to stop the defendant and Williams based on the information provided by the "CI"?
First, Officer Pepper testified as to the veracity and reliability of the "CI" by relating how the "CI" had made controlled purchases *837 for Officer Pepper, and had provided reliable information on three prior occasions. In this case, Officer Pepper was told that a black male would be getting off the bus prior to 9:00 A.M. The basis of this information, according to the "CI", was the defendant himself. When Officer Pepper began the surveillance, he observed one black male, who was picked up by the defendant, get off the bus. Not only did Officer Pepper have probable cause to stop the defendant based upon the totality of the circumstances, this information would have been satisfactory under the Aguilar-Spinelli test. This assignment of error lacks merit.
Argument # 2

Assignment of Error Number 3
The District Court erred, as a matter of law, in allowing evidence outside the scope of the opening statement.

Assignment of Error Number 8
The District Court erred, as a matter of law, in allowing a statement made by the defendant, without the State of Louisiana having given notice prior to the opening statement of its intent to utilize such statement.

Assignment of Error Number 11
The District Court erred, as a matter of law, in allowing defendant's statement to be introduced into evidence without a proper foundation.
La.C.Cr.P. Art. 766 provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
La.C.Cr.P. Art. 767 provides:
The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.
La.C.Cr.P. Art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
La.Cr.Cr.P. Art. 769 provides:
Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense.
Defendant's complaint is that it was error to admit his inculpatory statements because they were not mentioned in the opening argument. He then goes on to claim that it would violate Art. 767 to advert to those statements in opening argument and alleges that they were adverted to. First, there was no reference to any confession or inculpatory statement made in the State's opening statement. Moreover, since Art. 767 prohibits the State from doing so, it was not error to admit the statements in the absence of any mention of them in the opening statement. Finally, since there was pre-trial discovery in this case, Art. 768 is inapplicable and the State was not required to notify defendant of its intent to use the statements before its opening argument. These three assignments of error are without merit.
Argument # 3

Assignment of Error Number 4
The District Court erred, as a matter of law, in allowing physical evidence not stated in the answer to the motion for discovery.
It appears the defendant is referring to a slip of paper found on Williams bearing the defendant's phone number. In response to his motion for discovery, the State informed the defendant of the existence of the piece of paper, but not its contents. Thereafter, the State did not provide the defendant with a copy of the *838 slip of paper as requested in defendant's bill of particulars. However, it is apparent that the defendant had seen the slip of paper, that its existence and contents were known to his attorney and had, in fact, been the subject of pre-trial examinations. The defendant's objection was that he was not "formally" notified of the existence of the document during discovery. He makes no allegation that he did not know of its existence, nor is there any claim that he did not have a chance to examine it. There has been no showing of surprise or harm. This assignment of error is without merit.
Argument # 4

Assignment of Error Number 5
The District Court erred, as a matter of law, in denying defendant's motion for mistrial on the basis that defendant had not been notified of conflicting statements of Williams nor or his criminal record.

Assignment of Error Number 9
The District Court erred, as a matter of law, in allowing the State to utilize hearsay statements of a co-defendant or co-conspirator, without the State having disclosed same.

Assignment of Error Number 28
The District Court erred, as a matter of law, in allowing Williams to testify at page 149 of the transcript that someone else told him, i.e., that his son-in-law told him to give the bank bag to the defendant.
In Assignment of Error Number 5 the defendant alleges error in the failure to grant a mistrial on the grounds that the State had not properly complied with discovery requests in defendant's bill of particulars by informing the defendant of the "conflicting statements" of Williams. The mistrial statutes, La.C.Cr.P. Arts. 770, 771 and 775 provide:
Art. 770. Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
3) The failure of the defendant to testify in his own defense; or
4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Art. 771. In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Art. 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Art. 775. A mistrial may be ordered, and in a jury case the jury dismissed, when:
1) The defendant consents thereto;
*839 2) The jury is unable to agree upon a verdict;
3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
4) The court finds that the defendant does not have the mental capacity to proceed;
5) It is physically impossible to proceed with the trial in conformity with law; or,
6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
As defendant's claims are unrelated to prejudicial statements made at trial, they do not constitute grounds for a mistrial under La.C.Cr.P. Arts. 770 or 771. The "inconsistent statement" referred to is that at the time of the stop, Williams stated he "didn't know anything about this," but at the station a half hour later he made the video taped statement. The introduction of these statements without notice to defendant does not constitute conduct so prejudicial as to make it impossible for him to obtain a fair trial pursuant to La.C.Cr.P. Art. 775. There was no error in the trial court's denial of the motion for mistrial. Assignment of Error Number 5 is without merit.
In Assignment of Error Number 9, there is no allegation as to which statement was utilized without notice to the defendant. Before the trial, the State discovered that a video tape of Williams had been made. However, counsel for defendant was properly notified and was permitted to view the tape. While in Assignment of Error Number 28 defendant complains that the State utilized hearsay, he does not allege that he was not informed of that statement. This assignment of error is without merit.
Regarding the hearsay statement in Assignment of Error Number 28, the following exchange took place:
Q. Did you put that in the duffle bag?
A. No, sir, I didn't.
Q. Do you know what you were supposed to do with it?
A. Yes, sir.
Q. What was that?

MR. CULPEPPER:
Your Honor, we would object to this. Apparently, he's going to give some testimony based upon what someone may have told him which is hearsay, so he would have no way of personally knowing, unless it was hearsay, so we would object to any response to that question.

MR. RUDDICK:
Your Honor, I'm just asking this witness what his state of mind was as to that particular evidence, and I feel like it is admissible.

THE COURT:
I think that's true. I'll overrule the objection.
Q. Mr. Williams what were you supposed to do with that bank bag?
A. Well, his son-in-law told me when I was gettingwell, I was supposed to give it to Lee.
Q. Did you have any idea what was in the bank bag, Mr. Williams?
A. No, sir.
As can be seen, the question posed by the State was what the witness was to do with the bank bag, to which the defendant objected as hearsay. It would not be hearsay for the witness to testify as to what he was going to do and the court properly permitted the answer. The problem arose when the witness launched into a hearsay answer, i.e., revealing what someone had told him. This hearsay response was unsolicited, but counsel for defendant *840 did not object. This assignment of error is without merit.
Argument # 5

Assignment of Error Number 7
The District Court erred, as a matter of law, in allowing the introduction of a report from the North Louisiana Criminalistics Laboratory without compliance with La.R.S. 15:501, which requires "written notice of intent to offer proof by certificate".
Pursuant to La.R.S. 15:499 et seq., the State may prove the content of physical items through certificate. The defendant must be given notice in the event he wishes to cross-examine the expert witness. 15:499 provides:
A. All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination and analysis of evidence by scientific means are authorized to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. Such certificate shall list:
1) The date and time such evidence was delivered to such facility.
2) The name of the person making such delivery, and the person receiving same.
3) A brief description of the evidence.
4) The type of examination or analysis requested.
5) The name of the person making the examination or analysis.
6) The date or dates of the examination or analysis.
7) The results of the examination or analysis.
B. The certificate shall give the name and address of the facility in which the examination or analysis was made, and shall be signed by the person making the examination or analysis and by the person in charge of the facility.
15:500 provides:
In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom.
La.R.S. 15:501 requires that the State give the defendant written notice of its intent to "offer proof by certificate." In this case, the State, in writing, notified defendant that it intended to offer proof that the white powdery substance seized was cocaine "pursuant to La.R.S. 15:499, 15:500, 15:501." Defendant does not claim that he did not receive this letter and does not claim surprise or harm. His argument is that by stating "pursuant to La.R.S. 15:499, 15:500, 15:501," instead of using the word "certificate", the notice did not comply with 15:501. He does not explain this position or offer supporting authority. This assignment of error is without merit.
Argument # 6

Assignment of Error Number 10
The District Court erred, as a matter of law, in allowing into evidence a piece of paper with defendant's telephone number thereon.
Among the items taken from Williams was a piece of paper bearing the Trailways logo upon which the defendant's phone number was written. Defendant asserts this evidence was irrelevant since the defendant and Williams had known each other for several years, and therefore inadmissible under La.R.S. 15:435.
The State, however, contends that the evidence is relevant because it links the possesser of the cocaine, Williams, to the *841 defendant. This position is bolstered by the fact that Williams was riding on a Trailways bus and the phone number was written on Trailways paper. Further, as he arrived at approximately 8:30 in the morning, Williams attempted to phone someone. There is no evidence of any other phone numbers being taken from Williams.
The defendant also states that evidence which tends to confuse the jury or excite their emotions should be excluded, but does not show or allege that this evidence so qualifies. Furthermore, the trial judge is vested with broad discretion in determining the relevancy of evidence, and his ruling is not to be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Miles, 402 So.2d 644, 647 (La.1981). This assignment of error lacks merit.
Argument # 7

Assignment of Error Number 12
The District Court erred, as a matter of law, in allowing State Trooper Randall Pepper to give opinion testimony outside his field of expertise.
Counsel for defendant agreed that Trooper Pepper is an expert in narcotics investigations, but objected to his testimony defining a "courier" and explaining how cocaine is distributed on the street. Defendant does not explain how one could be an expert in narcotics investigation and not know these things, nor does he indicate any other testimony of Trooper Pepper which was outside his field of expertise. Furthermore, admissibility of expert testimony is within the discretion of the trial judge and his ruling on the qualifications of a witness will not be disturbed unless clearly wrong. State v. Staton, 433 So.2d 222, 224 (La.App. 1st Cir.1983), writ denied, 438 So.2d 1112 (1983); State v. Michel, 422 So.2d 1115 (La.1982). Assignment of Error Number 12 is without merit.
Argument # 8

Assignment of Error Number 13
The District Court erred, as a matter of law, in stating, after an objection to the rebuttal closing argument of the State, that the remarks of the assistant district attorney were not prejudicial.
During the rebuttal portion of his closing argument, counsel for the State criticized defense counsel's interpretation of the evidence. The following exchange took place:
"I think from the testimony you heard from the witness stand that a courier carrying two bags, not one, two bags belonging to Lee Johnson, sent from his house to Florida; in Florida he was given cocaine; he came back, picked up by the person who sent him and at the time they were picked up, they were caught. Mr. Culpepper wants us, I guess, to let them sell the forty-two grams, to let forty-two people buy them. Then we arrest them.

MR. CULPEPPER:
Your Honor, we object to that being improper argument to the jury.

THE COURT:
I'm just going to suggest that the DA restrict himself more specifically to the evaluation of the evidence.

MR. RUDDICK:
This is rebuttal, Your Honor.

THE COURT:
Rather than what Mr. Culpepper might have, in his own mind, have conceived. But I do not find that prejudicial, Mr. Culpepper.

MR. RUDDICK:
Thank you."
La.C.Cr.P. Article 774, which delineates the proper scope of argument at trial, provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
*842 The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
As comment (c) explains, however, there are no sanctions provided for the violation of this article. If the argument exceeds its scope, articles 770 and 771 are triggered. Art. 770 provides for a mandatory mistrial upon motion of defendant, when certain prejudicial remarks are made within the hearing of the jury by the judge, district attorney, or a court official.
When the remark or comment is not covered by Article 775, the relief available to the defendant is the admonition provided for in Article 771. We note that defendant did not take advantage of the relief provided by this article.
As stated in the last paragraph of Art. 771, a mistrial may be ordered by the court if it finds an admonition insufficient to assure the defendant a fair trial. Defendant did not request a mistrial, however. His argument seems to be that the prejudicial nature of this remark requires reversal of his conviction.
Not every prejudicial remark mandates a reversal of a defendant's conviction; reversal is only required when the court is convinced that the challenged remark influenced the jury and contributed to the conviction. State v. Sharpe, 418 So.2d 1344 (La.1982); State v. Howard, 449 So.2d 69, 73 (La.App. 4th Cir.1984).
The trial court in this case stated that it did not find the remark prejudicial. We find no abuse of discretion in this conclusion. This assignment of error is without merit.
Argument # 9

Assignment of Error Number 14
The District Court erred, as a matter of law, in conducting an evidentiary hearing with reference to the removal of a person already selected as a juror.
After having been accepted by the State and the defendant, information came to the prosecutor that juror Thurman Webb had given untruthful answers during voir dire regarding his relationship with the defendant. This relationship apparently was such that Webb would be subject to a challenge for cause by the State. La.C.Cr.P. Art. 795 provides:
A. A juror cannot be challenged for cause by the state or the defendant after having been accepted by the challenging party, unless the ground for the challenge was not known by the challenging party prior to acceptance. A challenge for cause must be made before the indictment is read to the jury.
B. A peremptory challenge may be made by the state at any time before the juror is accepted by it, and by the defendant at any time before the juror is sworn. A peremptory challenge by the state shall not be based solely upon the race of the juror.
La.C.Cr.P. Art. 796 provides:
If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course.
As these articles permit a challenge for cause after a juror is seated, the trial court held an evidentiary hearing to determine if the juror was subject to a challenge for cause. Upon determination of the truth of the allegations, counsel for State and defendant jointly stipulated to the removal of juror Webb.
Defendant's objection is to the holding of the evidentiary hearing, as La.C.Cr.P. Arts. 795 and 796 do not specifically state that an evidentiary hearing should be held in such matters. State v. Stephenson, 291 So.2d 767 (La.1974), stands for the proposition that an accused has no right to a trial by any particular jury or juror, but only to a trial by competent, impartial jury. Here, defendant does not complain of any juror he was forced to accept. Indeed, the alternate joined the panel. He does not show that any harm came to the defendant or that the evidentiary hearing was not a proper method for implementing Arts. 795 *843 and 796. As the Court stated in Stephenson, supra at 768:
"Defendant fails to show that any special class was systematically excluded, or that he was deprived of a trial before an unbiased jury because of the defect alleged. The defendant was not compelled to accept an obnoxious juror as a result of the ruling, (citation omitted). The accused has no right to a trial by any particular jury or juror, but only to a trial by a competent, impartial jury," citing State v. Preece, 270 So.2d 850 (La.1973) and State v. Boutte, 255 La. 605, 232 So.2d 288 (1970)."
There is no showing that the trial judge abused his discretion. This assignment of error is without merit.
Argument # 10

Assignment of Error Number 15
The District Court erred, as a matter of law, in failing to exclude possible responsive verdicts pursuant to the provisions of Code of Criminal Procedure Article 814(C) when there was absolutely no proof to support said responsive verdicts, including the responsive verdict of guilty.
Defendant claims there is no evidence to support any of the verdicts under La.C.Cr.P. Art. 814. His argument is that pursuant to La.R.S. 40:967(C), one cannot be found guilty of violating this section in the absence of proof of possession of the drug without a prescription. LSA-R.S. 40:967(C) provides:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this Part.
However, La.R.S. 40:967 must be read in conjunction with La.R.S. 40:978(A) as shown below:
Except when dispensed or administered directly by a medical practitioner or administered by a person authorized to administer by such practitioner, other than a pharmacist, to an ultimate user, no controlled dangerous substance included in Schedule II, which is a prescription drug as determined under the Louisiana Revised Statutes of 1950, may be dispensed or administered without the written prescription of a practitioner, except that in emergency situations, as prescribed by the department by regulation, such drug may be dispensed or administered upon oral prescription reduced promptly to writing and filed by the pharmacist. Prescriptions shall be retained in conformity with the requirements of R.S. 40:976. No prescription for a Schedule II substance may be refilled.
It is apparent that La.R.S. 40:967(C) refers to Schedule II drugs which are capable of being prescribed, not Schedule II drugs per se. Defendant makes no allegation that cocaine is a prescription drug. This assignment of error is without merit.
Argument # 10

Assignment of Error Number 16
The District Court erred, as a matter of law, in failing to read the entire statute in question, i.e., LSA-R.S. 40:967.

Assignment of Error Number 17
The District Court erred, as a matter of law, in not reading at least the sentencing portion of same and particularly the mandatory sentence provided by law to the jury.

Assignment of Error Number 21
The District Court erred, as a matter of law, in refusing to allow counsel for defendant to argue the sentencing portion, including the mandatory sentence to the jury.
The potential penalty for the offense with which defendant was charged is found in R.S. 40:967(B)(1). That section provides for a term of imprisonment at hard labor for not less than five nor more than 30 years. This penalty range does not constitute a "mandatory sentence" which *844 must be read to the jury as alleged by defendant. State v. Blackwell, 298 So.2d 798 (La.1974), U.S. cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975). These two assignments of error are, therefore, without merit. Furthermore, since it was not error for the trial court to omit reading the penalty section of the statute, it was not error to fail to read the entire statute. Therefore Assignment of Error Number 16 is also without merit.
Argument # 11

Assignment of Error Number 18
The District Court erred, as a matter of law, in granting the State's request for special jury instruction number 1.

Assignment of Error Number 19
The District Court erred, as a matter of law, in giving the instruction that was given to jury on "constructive possession".

Assignment of Error Number 20
The District Court erred, as a matter of law, in refusing to give defendant's request for jury instructions numbers 1 through 6.
Pursuant to the State's request Number 1, the Court included in its charge the following statement:
"As I indicated in this case, the second obligation that you would have to find in order to find this defendant guilty is that at the time of his possession he had a specific intent to distribute cocaine. Now, an intention to distribute narcotics or cocaine can be inferred from the quantity in the defendant's possession."
This is an incomplete statement of the law and is misleading. The State based its requested instruction on State v. Trahan, 425 So.2d 1222 (La.1983). However, that case states that "intent to distribute may be inferred from the circumstances." Trahan, supra, at 1225. (Emphasis added). In Trahan, supra, the amount of marijuana was 1¾ pounds, enough to make approximately 1600 cigarettes. This amount met the standard set forth in State v. Greenway, 422 So.2d 1146 (La.1982), that mere possession of marijuana is not evidence of intent to distribute unless the quantity is so large that no other inference is reasonable. Greenway, supra, at 1148.
In State v. House, 325 So.2d 222 (La.1975), the supreme court produced a five-part test for use in determining whether intent to distribute exists:
1) Packaging in a form usually associated with distribution;
2) Had the defendant ever distributed or attempted to distribute the drug before?
3) Was the amount such as to create a presumption of intent to distribute?
4) Was the amount inconsistent with personal use?
5) Existence of any paraphernalia (baggies, scales, etc.) evidencing an intent to distribute. House, supra, at 225.
In addition to the large quantity of marijuana, the court in Trahan, supra, found that the amount was inconsistent with personal use, the drug was packaged in a form associated with a sale to others, and drug paraphernalia was confiscated. The Trahan court thus found four out of the five House tests met. While there was testimony that the amount here was inconsistent with personal use, this is but one element of the House test. The Court in State v. Montegut, 471 So.2d 286 (La.App. 4th Cir.1985), stated that "the specific intent to distribute may be inferred from the amount of the controlled substance found in the defendant's possession," supra, at 291, but the circuit cases and Louisiana Supreme Court cases it cites standing for such a proposition all include a finding of other House factors as well. There is no evidence in this case that the amount was capable of no other reasonable inference than intent to distribute.
The Louisiana Supreme Court has stated, "it is well-established that the ruling of a trial court on an objection to a portion which is charged to a jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be erroneous *845 and prejudicial." State v. Perry, 408 So.2d 1358, 1363-4 (La.1982). In permitting the jury to find the defendant guilty of possession with intent to distribute based on the quantity of drugs in his possession, this instruction so qualifies. This assignment of error is meritorious. As this error relates solely to the finding of an intent to distribute, however, and not to the finding of possession, the relief is not to reverse for a new trial on the merits, but is to be found in the analysis of assignment of error Number 23.
In response to Assignment of Error Number 19, we note that the Court defined constructive possession as follows:
"Possession may be either actual or what the law calls constructive. Actual possession means just what it says: having an object in one's hands or on one's person in such a way as to have direct physical contact or control. Constructive possession means having such a relationship with an object in the nature of ownership or proximity to it that one has a direct right and ability to reduce it to actual physical control or dominion."
Defendant does not state what is wrong with this definition, but rather asserts that "knowledge of presence of drugs is insufficient to prove dominion or control over them as to establish possession. Mere possession of drugs is not evidence of intent to distribute." There is nothing in the definition given by the court that would violate State v. Cann, 319 So.2d 396, 398-399 (La.1975), or State v. Guirlando, 491 So.2d 38, 40 (La.App. 1st Cir.1986). Unlike the instruction complained of in Assignment of Error Number 18, the instruction is neither incomplete or misleading. An instruction to the effect that "mere presence in the area where the controlled dangerous substance is found is insufficient to constitute constructive possession" would have properly followed the court's instruction on constructive possession at this point in the charge. The defendant did not request this, however. Assignment of error Number 19 is without merit.
Defendant offered six requested instructions, all of which were denied.

Defendant's Request for Jury

Instruction Number 1
One and one-half ounces of cocaine is consistent with an amount that would be used by a person for his own personal consumption and is no evidence of possession with intent to distribute. See State v. Bourgeois, 406 So.2d 550.

Defendant's Request for Jury

Instruction Number 2
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this part. See La.R.S. 40:967(C).

Defendant's Request for Jury

Instruction Number 3
The burden was upon the State of Louisiana in this matter to show that defendant did not have a valid prescription to the controlled dangerous substance in question and if the State of Louisiana has not proved to your satisfaction that the defendant had no valid prescription for the controlled dangerous substance in question, it is your duty to find the defendant not guilty. See La.R.S. 40:967(C).

Defendant's Request for Jury

Instruction Number 4
Knowledge of presence of drugs is insufficient to prove dominion or control over the drugs, and therefore, is insufficient to establish possession. See State v. Blackburn, 646 F.2d 904.

Defendant's Request for Jury

Instruction Number 5
Mere possession of drugs is not evidence of intent to distribute. See State v. Williams, 457 So.2d 902.

*846 Defendant's Request for Jury

Instruction Number 6
To convict for crime of possession of a controlled substance the State must present evidence showing the defendant exercised actual or constructive possession of the substance by having it under his control or dominion. Consequently, if the defendant did not have cocaine under his control or dominion, you must find him not guilty. See State v. Dunn, 446 So.2d 829.
La.C.Cr.P. Art. 807 states:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
In Instruction Number 1, defendant confuses two of the House tests; pure amount and "amount inconsistent with personal use." Pure amount is an amount so great that its possession alone warrants no reasonable inference other than that of an intent to distribute. However, a lesser amount may not warrant the conclusion that one intended to distribute, yet be so high that it would be inconsistent with personal use, and may be combined with another factor such as paraphernalia or packaging to provide sufficient evidence for a conviction of possession with intent to distribute. In State v. Bourgeois, 406 So.2d 550, at 554 (La.1981), the Louisiana Supreme Court stated:
"The amount of cocaine found in defendant's suit case at the time of his arrest was no more than 1½ ounces. Although defendant did plead guilty to possession with intent to distribute, the small amounts would seem to be more consistent with amounts for his own personal consumption."
However, this case did not hold that 1½ ounces is per se consistent with personal consumption. Thus, instruction number 1 is an incorrect statement of the law.
Requests Numbers 2 and 3 dealing with prescriptions were not necessary, and in any event had been included in the trial court's general charge. Therefore, it was not error to deny them. While Request Number 4 directly follows Harris v. Blackburn, 646 F.2d 904, 906 (5th Cir.1981), it is misleading. "Mere knowledge of presence of drugs ... is therefore alone insufficient to establish possession" is a more accurate statement of the law in this context. The trial court did not err in denying requested jury instruction Number 4.
Request Number 5 is correct but incomplete. Mere possession of a sufficient quantity of a drug triggers the pure possession test of House, supra. Therefore, the instruction would need to be modified to show that mere possession of an amount inconsistent with personal use is not evidence of intent to distribute. For this reason, the Court did not err in denying this request.
Number 6 is an incorrect statement of the law. As previously discussed, one need not exercise actual control or dominion in order to have constructive possession. All that is required is to have a "direct right and ability to exercise control." This distinction is in fact the essence of constructive possession. The court was not wrong in denying this instruction.
The trial court committed no reversible error in denying all six of the defendant's requests for special instructions. Assignment of Error Number 20 is without merit.
Argument # 12

Assignment of Error Number 24
The District Court erred, as a matter of law, in denying defendant's motion in arrest of judgment.
La.C.Cr.P. Art. 859 provides that:
The court shall arrest the judgment only on one or more of the following grounds:
*847 1) The indictment is substantially defective, in that an essential averment is omitted;
2) The offense charged is not punishable under a valid statute;
3) The court is without jurisdiction of the case;
4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;
5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;
6) Double jeopardy, if not previously urged; or
7) The prosecution was not timely instituted, if not previously urged.
Defendant makes the assertion that La.R.S. 40:967 is invalid, but does not offer any support for this position.
In a search for errors patent, a review of the statute does not show any invalidity. Furthermore, in State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.1983), writ denied, 433 So.2d 711 (1983), a case involving the production of marijuana, the court specifically upheld the validity of La.R.S. 40:967(A)(1), the section under which defendant is charged. Assignment of error Number 24 is without merit.
Argument # 13

Assignment of Error Number 22
The District Court erred, as a matter of law, in refusing to instruct the jury on the breakdown of possession of cocaine.
Again, La.R.S. 40:967 refers to La.R.S. 40:978, the statute dealing with Schedule II prescription drugs. As cocaine is not such a drug, this assignment of error is without merit.
Argument # 14

Assignment of Error Number 23
The District Court erred, as a matter of law, in denying defendant's motion for a new trial.
While the number of complaints contained in defendant's motion for a new trial ran into the dozens, only insufficiency of the evidence is asserted in this argument. No other assignment of error attacks sufficiency of the evidence. Under the jurisprudence, pursuant to La.C.Cr.P. Art. 851, the trial court, in response to a motion for a new trial, reviews only the weight of the evidence, not the sufficiency. The trial court's determination of whether to grant or deny a motion for a new trial, on this basis, is not subject to review by the appellate courts. State v. Williams, 458 So.2d 1315, 1324 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (1985); State v. Camanita, 411 So.2d 13, 17 (La.1982). U.S. cert. denied, 459 U.S. 976, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982).
La.C.Cr.P. Art. 858 states:
Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law.
This assignment of error complains of the trial court's denial of the motion for a new trial as opposed to insufficiency of the evidence, and that decision is normally not subject to review by this Court. However, the Louisiana Supreme Court in State v. Peoples, 383 So.2d 1006 (La.1980) and State v. Raymo, 419 So.2d 858 (La.1982), ruled that sufficiency errors must be reviewed on appeal "regardless of how the error is brought to the attention of the Court." Raymo, supra, at 861. Therefore, we will review the sufficiency of the evidence.
Defendant claims that there is insufficient evidence to support the conclusion that he even possessed the cocaine. His argument is that he was in the presence of the cocaine for only a few seconds and therefore could not have possessed it. Actual possession is not necessary, however; constructive possession is sufficient. Cocaine was in the pickup truck with the defendant and he could have exercised dominion over it had he chosen to do so.
Cocaine was found in a baggie wrapped in foil inside a tape-wrapped bank bag which was in a duffle bag. Defendant arrived at 8:30 in the morning to pick up Williams at the bus stop. He admitted *848 ownership of the bank bag and produced a key that fit the lock. Further, he stated that he had last seen the bank bag in Florida. C.W. Williams testified that the duffle bag belonged to the defendant, that the defendant had sent him to Florida, the bank bag was placed in the duffle bag in Florida and that he had been told to give the bank bag to defendant. A rational juror could reasonably have found that the defendant had constructive possession of the cocaine.
However, there is no testimony from Williams about what the defendant intended to do with the cocaine nor is there any evidence that the defendant attempted to distribute it. Therefore, to prove defendant possessed the cocaine with intent to distribute, the State was required to produce sufficient evidence to satisfy the circumstantial evidence rule and the sufficiency of evidence rule of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The standard for determining whether intent to distribute is present in possession with intent to distribute cases is found in State v. House, supra. In the case at bar the cocaine was packaged in a single unit rather than broken down into small packets as if for sale to others. There was no evidence of prior cocaine sales made by defendant. Although there was testimony that 42 grams of cocaine (approximately 1½ ounces) was found, and that this drug is priced by the gram and normally divided into one gram, 1/8, ¼, and ½ ounce packages for resale, there is no testimony regarding how many "doses" 1½ ounces would provide, or how much cocaine can be consumed by one person in a day. Moreover, there is no evidence of any paraphanelia. Thus, the only House test met here is the fourth one, as Trooper Pepper testified that 1½ ounces is inconsistent with personal use.
It should be noted that while the House test appears to be disjunctive, the jurisprudence has so far only affirmed cases in which two or more of the elements have been met, except in cases involving large quantities of drugs. The Louisiana Supreme Court, moreover, has been strict in proving intent to distribute in these cases.
The State met the standard of proving that defendant possessed cocaine, but did not meet the standard of proving that he had the intent to distribute. Therefore, pursuant to the authority vested in us by La.C.Cr.P. Article 821(E) we shall modify the verdict to one of guilty of possession of cocaine [La.R.S. 40:967(C)(2) ] and remand for resentencing.
In view of this ruling, we do not consider defendant's assignment of error which complains of excessive sentence.
Decree
For the reasons set forth, we modify the verdict against the defendant Johnson to render a judgment of conviction of the lesser included responsive offense of possession of cocaine. The sentence is vacated and the case is remanded to the trial court for resentencing.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting.
I respectfully dissent from the holding of this court that the state's evidence is insufficient, when viewed in the light most favorable to the state, to prove beyond a reasonable doubt that the defendant possessed the cocaine at issue with the intent to distribute.
Trooper Pepper, the arresting officer, was qualified as an expert in narcotics investigation, particularly cocaine, without objection from the defense. Trooper Pepper testified that the amount of cocaine involved in this case was an ounce and a half. Although this cocaine was packaged in one unit, Trooper Pepper testified that any quantity over one-half ounce was inconsistent with personal use. The substance, he stated, is distributed by the partial ounce. Furthermore, the predominate method is by the gram at a $125.00 per gram. Obviously, then, the defendant was arrested with the makings of 42 separate gram packages, plus or minus depending on the care with which the drug was packaged, having a street value of $5,250.00. This testimony of Trooper Pepper's is to be viewed in the light most favorable to the *849 state. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The jury obviously accepted it and I would also.
This view is notwithstanding State v. House, 325 So.2d 222 (La.1975), which is relied upon by the majority. House was well prior to the 1979 amendments to LSA-R.S. 40:967 which added penalties for possession of certain amounts of cocaine. These amounts might at first glance seem minimal. Since that amendment, one convicted of possessing over 28 grams (one ounce equals 28.35 grams) is liable for a minimum sentence of five years at hard labor, up to thirty years, and a mandatory fine of between $50,000 and $150,000. Moreover, five years of the sentence is to be served without benefit of probation or parole. LSA-R.S. 40:967(F)(1) and (G)(1). Thus, House is a relatively old case in terms of narcotics matters and one decided before the "cocaine epidemic." I suggest the legislature action significantly reduces House`s precedential value. But most importantly, I find this record adequate to support the conviction.