804 So.2d 47 (2001)
STATE of Louisiana
v.
Joseph L. MARINO.
No. 2000-KA-1131.
Court of Appeal of Louisiana, Fourth Circuit.
June 27, 2001.
Rehearing Denied January 18, 2002.
*50 Harry F. Connick, District Attorney, Anne M. Dickerson, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
J. Wilson Rambo, Louisiana Appellate Project, Monroe, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES, Judges MIRIAM G. WALTZER and JAMES F. McKAY.
WALTZER, Judge.

STATEMENT OF THE CASE
By bill of information dated 2 October 1997, defendant was charged with possession *51 of marijuana with the intent to distribute. He pleaded not guilty on 8 October 1997. On 24 March 1998, he was tried by a twelve-member jury that found him guilty as charged. Defendant filed a motion for new trial that was denied on 9 September 1999. On 28 February 2000, the trial court sentenced defendant to five years at hard labor, with credit for time served. The State filed a multiple bill on the same date, and defendant pleaded guilty to the multiple bill. The trial court vacated the original sentence and resentenced defendant to fifteen years at hard labor, with credit for time served, to run concurrently with his sentence in # 392-252. The trial court denied defendant's motion for reconsideration of sentence and granted his motion to appeal.
We affirm defendant's conviction and sentence.

STATEMENT OF THE FACTS
Shay Oliphant, a parole and probation agent, identified defendant in open court before the jury and testified that on 24 July 1997, he and other agents conducted a search of defendant's home. He stated that he knocked on the door, which was answered by defendant, and identified himself. He asked defendant to open the door, and defendant did so, whereupon Oliphant detected a strong smell of marijuana. Oliphant further testified that after defendant allowed them to enter the house, he saw what he believed to be a burned marijuana cigarette on the coffee table. He then placed defendant under arrest for possession of marijuana, read him his Miranda rights from a card the agent carried, and obtained defendant's permission to search the house. Oliphant stated that he searched the living room while three other agents searched the rest of the house. Oliphant confiscated some tin foil and a "motorized pipe" used for smoking marijuana that had some residue in it. He also noticed women's clothing in the house. He asked defendant if there was anything else in the room, and defendant told him that there was a tray underneath the couch that had a little marijuana on it. Oliphant identified the confiscated contraband and paraphernalia, testifying to his belief that the cigarettes contained marijuana.
Agent Patrick Green identified the defendant and testified that he participated in the investigation of defendant and that he searched the third room of the defendant's house. He stated that it was the only room that he would classify as a bedroom because it was the only room with a bed. Green further stated that he recovered $81.00 in cash from the top of the dresser and that he also found women's clothing in the bedroom. Green testified that he found a black shoe box filled with individually wrapped bags of marijuana on the floor next to the closet. He could not recall if it was man's or woman's shoe box, but he said it was at least big enough for his shoes. Green testified that he found two scales in an open black bag.
Agent Paul Regan testified that he searched the kitchen and the bathroom, but he found no contraband in either room. He also searched the bedroom. Agent Kevin Banks testified that he searched the third room of the house where he found a small black box containing marijuana. He stated that the box was next to an open closet and that the box was uncovered.

ERRORS PATENT
A review of the record shows no errors patent.

FIRST ASSIGNMENT OF ERROR AND FIRST PRO SE ASSIGNMENT OF ERROR: The trial court erred in denying defendant's motion to suppress evidence.
Defendant argues that the actions of the probation officers who entered *52 his house were a subterfuge to conduct a warrantless search based upon information from the federal probation office which did not rise to the level of reasonable and articulable suspicion, much less probable cause.
At the hearing on the motion to suppress the evidence, Agent Oliphant testified that he went to defendant's house after having received a telephone call from Donna Thompson, a federal parole officer. Thompson told Oliphant that Samantha Dees, a federal parolee, had been arrested at 619 Pelican Street and that Dees told the marshals who arrested her that defendant was responsible for her being on heroin. The marshals also told Thompson, who in turn told Oliphant, that they spoke with defendant who appeared to be under the influence of an illegal substance. Oliphant, concluding that defendant was in violation of his parole from the state of Utah, decided to assemble a team to go to defendant's home. Oliphant testified about going to defendant's home, smelling marijuana, and being allowed to enter.
Defendant testified at the suppression hearing that the agents came in with guns drawn, handcuffed him, and threw him onto the couch. He denied that any drugs were in plain sight and testified that nothing was found in his bedroom. He stated that the marijuana was found in Samantha Dees' bedroom in her shoe box. He denied having been under the influence of drugs when the marshals arrested Ms. Dees. He also stated that Ms. Dees was arrested down the street from his house and that the marshals came in and searched but found nothing.
This court held in State v. Thomas, 96-2006 (La.App. 4 Cir. 11/6/96), 683 So.2d 885 that probationers and parolees occupy essentially the same status; and, both have a reduced expectation of privacy that allows reasonable warrantless searches of their persons and residences by their probation or parole officer, even though less than probable cause may be shown. This reduced expectation of privacy evolves from a probationer's conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the probationer is in compliance with the provisions of his probation. Nevertheless, a probationer is not subject to the unrestrained power of the authorities; a search of a probationer may not be a subterfuge for a police investigation. The Thomas opinion, quoting from State v. Shields, 614 So.2d 1279, 1282-1283 (La. App. 2 Cir.1993), stated that a warrantless search of a probationer's property is permissible when:
[I]t is conducted when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In determining the reasonableness of a warrantless search, we [a reviewing court] must `consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.' [Citing State v. Malone, 403 So.2d 1234, 1239 (La. 1981).]
Although the State still bears the burden of proof because the search was conducted without a warrant, when the search is conducted for probation violations, the State's burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring. Id.
In Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the probationer's home was searched without a warrant pursuant to a Wisconsin regulation what stated that it was a violation of probation to refuse to consent to a search of one's residence. The probation office *53 had received a tip that there might be guns in the probationer's apartment. The United States Supreme Court affirmed the search on the basis that "it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." Id. at 873, 107 S.Ct. at 3168. The Court noted that the probation system itself presents "special needs" beyond normal law enforcement. The Court further noted that a warrant requirement would interfere with that system, "setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires;" further, the delay inherent in securing a warrant "would make it more difficult for probation officials to respond quickly to evidence of misconduct" and "would reduce the deterrent effect that the possibility of expeditious searches would otherwise create...." Id. at 876, 107 S.Ct. at 3170.
We find nothing in the record to support the contention that the warrantless search of defendant's home was a subterfuge for a police investigation. The woman with whom he had been sharing that home had been arrested the day before the search for violation of her probation. The marshals who arrested her suspected that defendant was under the influence of a controlled substance at that time. Furthermore, the woman told the agents that the defendant had addicted her to heroin. Because of this, Oliphant had reasonable suspicion that defendant was in violation of his parole when he and the other agents went to defendant's home. Furthermore, Oliphant smelled marijuana when defendant opened the door and let them inside; and, he also saw marijuana in plain view on the coffee table. This is an additional basis that justifies the search of defendant's residence by the parole agents. The trial court did not err in denying the motion to suppress the evidence, and these assignments of error are without merit.
SECOND AND THIRD ASSIGNMENTS OF ERROR AND ORIGINAL PRO SE ASSIGNMENT OF ERROR: The State failed to present sufficient evidence of defendant's guilt; the testimony of the parole officers was contradictory and conflicting, and the trial court erred in failing to grant defendant's motion for a new trial.
The standard for reviewing a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact after could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *54 Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012.
Defendant was convicted of possession of marijuana with the intent to distribute. To support a conviction for possession with intent to distribute a controlled dangerous substance, the State must prove that the defendant knowingly and intentionally possessed the drug with the intent to distribute it. State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078. The State need only establish constructive possession of the controlled dangerous substance to support a conviction. State v. Trahan, 425 So.2d 1222 (La.1983). A person found in the area of the contraband can be considered in constructive possession if the illegal substance is subject to his dominion and control. Id.
Defendant makes much of alleged inconsistencies in the testimony of the various agents who testified at trial, but the inconsistencies are inconsequential to resolution of the main issue, whether the State proved knowing possession. The officers described only one room of the four-room house as being a bedroom because it was the only room with a bed in it; and, it was in this room that the marijuana was found. Therefore, the evidence showed that defendant exercised dominion and control over the marijuana. These assignments of error are without merit.
FOURTH, FIFTH AND SIXTH ASSIGNMENTS OF ERROR AND SECOND PRO SE ASSIGNMENT OF ERROR: The trial court erred in imposing an excessive sentence, unsupported by sufficient factual basis, and in failing to order a pre-sentence investigation.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion with the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992). The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, supra. The reviewing court shall not set aside a sentence for excessiveness if the records supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
Generally, the reviewing court must determine whether the trial judge adequately complied with the guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983). If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case. State v. Egana, 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223. The articulation of the factual basis for the sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions; and, where the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even where there has not been full compliance with Article 894.1.
Defendant received the minimum sentence for a second felony offender convicted of possession of marijuana with the intent to distribute, the sentencing range being fifteen to sixty years. La. R.S. 15:529.1(A)(1)(a); La. R.S. 40:966. Even though a sentence under La. R.S. 15:529.1 is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of *55 punishment, or is nothing more than the needless and purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276 (La.1993). However, the entire Habitual Offender Law has been found constitutional; thus, the minimum sentences it imposes upon multiple felony offenders are presumed to be constitutional. State v. Johnson, 97-1906 pp. 6-7 (La.3/4/98), 709 So.2d 672, 675. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457.
In State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, the Supreme Court discussed what it characterized as the "rare" circumstances where a sentence lower than the minimum sentence mandated by the Habitual Offender Law is required to be imposed because imposition of the mandatory sentence would be excessive under the Louisiana Constitution. The court held:
We held that "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." State v. Johnson, supra at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id.
In making this determination, we held that "while a defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." Id.

Lindsey, at p. 5, 770 So.2d at 343.
The trial court did not err in imposing this sentence. At the sentencing hearing, it was acknowledged that defendant could have been charged with being a fourth felony offender and that the State agreed to charge at a significantly lower level. The trial judge stated that he did not think a less then minimum sentence pursuant to Dorthey would be upheld and sentenced defendant to the minimum fifteen year sentence. Considering the fact that defendant could have been charged as a fourth felony offender and thus subject to a mandatory life sentence, he was given mercy and leniency when the State agreed to charge him only as a second felony offender. Defendant has not presented clear and convincing evidence to rebut the presumption that the fifteen year minimum sentence is constitutional. As to the trial court's failure to order a pre-sentence investigation report, we find no abuse of discretion. It is discretionary with the trial court that a pre-sentence investigation be ordered prior to sentencing, and there is no mandate that it be ordered. La.C.Cr.P. art. 875; State v. Hayden, 98-2768 (La.App. 4 Cir. 5/17/00), 767 So.2d 732. A pre-sentence investigation is an aid to the trial court and is not a right of the defendant. Id. The trial court's failure to order a pre-sentence investigation will not be reversed absent an abuse of discretion.
*56 Accordingly, these assignments of error are without merit.
THIRD PRO SE ASSIGNMENT OF ERROR: Ineffective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984). Only where, as here, the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced him. With regard to counsel's performance, the defendant must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e. a trial whose result is reliable. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant's conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989). If the claim fails to establish either prong, the reviewing court need not address the other. State ex rel. Murray v. Maggio, 736 F.2d 279 (5th Cir.1984).
If an error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, hindsight is not the proper perspective for judging the competence of counsel's decisions because opinions may differ as to the advisability of a tactic; and, an attorney's level of representation may not be determined by whether a particular strategy is successful. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Arthur Dumaine represented defendant at trial; and, at the hearing on the motion for new trial, he admitted that he did not inspect any of the evidence prior trial and did not order a transcript of the motion to suppress hearing. Dumaine stated that he thought it was an "open and shut case." He admitted that he did not interview Samantha Dees because he believed she would not be helpful to his defense and the defendant had written him a letter stating that he doubted whether she would be a good witness for him. Dumaine stated that he believed that defendant was guilty of the offense and that he tried to create reasonable doubt in the minds of the jurors. He also stated that he spoke with the federal agents who arrested Ms. Dees, but he could not recall whether he tried to get any of their reports. He could not recall why he did not introduce a picture showing a black shoebox containing the marijuana even the though the State introduced into evidence a green shoebox.
Defendant testified at the hearing on the motion for new trial that Dumaine told him that he (Dumaine) had paid off the court because that was the way things were done in Louisiana. He also testified that he had given Dumaine statements and affidavits from potential witnesses and that on the morning of trial, he demanded that Dumaine ask for a continuance because Dumaine had not obtained service of a subpoena on any of those witnesses.
*57 The trial judge denied the motion for new trial because the standard with regard to ineffective assistance had not been met. The judge also stated that he did not think that defendant had received the greatest defense he had ever seen but that it was not a situation that warranted a new trial.
The trial court's conclusion that defendant had not met his burden in establishing that he received ineffective assistance of counsel is not erroneous. Defendant is essentially complaining about Dumaine's trial strategy. This assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.