MADELEINE M. LANDRIEU, Judge.
| Michael Jones was charged by bill of information with one count of aggravated *861 burglary in violation of Louisiana Revised Statute 14:60, one count of possession of a firearm by a convicted felon in violation of Louisiana Revised Statute 14:95.1, and one count of illegal discharge of a weapon in violation of Louisiana Revised Statute 14:94. Following a jury trial, Mr. Jones was found guilty of simple burglary of an inhabited dwelling (a responsive verdict to aggravated burglary) and guilty of possession of a firearm by a convicted felon. He was acquitted on the charge of illegal discharge of a weapon.
On the conviction for simple burglary, the trial court sentenced Mr. Jones to serve twelve years at hard labor. On the conviction for possession of a firearm by a convicted felon, the trial court sentenced Mr. Jones to fifteen years at hard labor and assessed a fine of one thousand dollars. The trial court ordered that the sentences run concurrently. Mr. Jones timely filed this appeal of his convictions and sentences.

FACTS

The victim in this case, Keyondra Bridges, and the defendant, Michael Jones, knew each other. They had, at one point in their relationship, been dating 12partners. At Mr. Jones’ trial, Keyondra[1] testified that she and Mr. Jones had dated back in 2003 and again from July through September of 2009. She denied they were still dating on November 10, 2009, the date of the incident in question. According to her testimony, on that date, Mr. Jones called her from his work at Popeye’s in Slidell and she agreed to go with him to a movie.[2] She drove to Slidell, picked Mr. Jones up from his sister’s house, and they went in her car to see the movie, Paranormal Activity 2. On their way, they stopped at a daiquiri shop where Mr. Jones bought two daiquiris. According to Keyondra, he drank them both before the movie.
After the movie, Keyondra tried to bring Mr. Jones back to his sister’s house in Slidell but he refused to get out of the car. He wanted to go out, so she drove to Bourbon Street to placate him. Shortly after arriving on Bourbon Street, Keyon-dra was ready to leave so she called Mr. Jones’ sister, hoping that his sister would pick him up or would be able to persuade him to go to her house. When that tactic was unsuccessful, Keyondra drove to the Seventh District Police Station in New Orleans Bast hoping to get a police officer to help her get Mr. Jones out of her car. Mr. Jones ultimately got out of the car voluntarily at the police station, and Keyondra drove to her parents’ house.
Soon after she left him, Mr. Jones began calling Keyondra on her cell phone because he wanted her to drive him home. During the phone calls, he threatened to kill her parents, so she left their house and went to her grandmother’s, where she was living at that time, and went to bed.
|.c. Keyondra then heard Mr. Jones knocking on the window and doors of her grandmother’s home, but she did not respond. The front door to the house had a glass outer door and a wooden inner door. Mr. Jones broke the front glass door, but could not get in. He went to the side door and “kicked it in.” He then went to her bedroom, kicked in the bedroom door, and pulled her out of bed. Mr. Jones grabbed her by the neck and dragged her down the hall and out of the house. Keyondra yelled to her grandmother that Mr. Jones was trying to kill her and to call the police.
*862 Keyondra testified that Mr. Jones dragged her into the alleyway and pushed her to the ground. He started punching her in the face, chest and arms. At that point, a friend of Mr. Jones walked up and offered to take him home. Mr. Jones refused, saying that he wanted Keyondra to take him home. The friend then left, and Mr. Jones dragged Keyondra back into her bedroom, telling her to put clothes on. While they were in her bedroom, Mr. Jones noticed Keyondra’s gun on the floor. He saw Keyondra reach for the gun, pushed her out of the way and took the gun. He told Keyondra that if she called the police, he would kill her. Mr. Jones then took Keyondra back outside to her car at gunpoint and ordered her to take him home. As he got in the car, Keyondra was able to get away. As she ran back into the house, she heard gunshots. Key-ondra locked herself in the bathroom with her grandmother and called the police.[3]
According to Keyondra, Mr. Jones was not at the house when the police arrived but returned soon after. She saw the police arrest Mr. Jones and heard him yell, “I’m going to be back” or “It’s not over.”
|4Mr. Jones testified on his own behalf. He acknowledged three prior convictions— possession of cocaine in 1999, possession with the intent to distribute cocaine in 2003, and distribution of cocaine in 2004. He testified that he and the victim began dating in 2003 and were dating at the time of the incident. He corroborated Keyon-dra’s testimony that they went to a movie and then to Bourbon Street. He contends that they began arguing so she put him out of the car at the Seventh District Police Station. Mr. Jones was talking to Officer Gabriel Osborne in the parking lot of the Seventh District when Keyondra pulled away. He testified that he asked Officer Osborne to give him a ride to Sli-dell, but she declined. Mr. Jones continued to try to find a ride to Slidell. He found a friend who could not take him to Slidell, but could take him somewhere in the New Orleans East area. So, he had his friend take him to Keyondra’s grandmother’s house. Mr. Jones then started calling Keyondra from his cell phone and she answered a majority of his calls.
Mr. Jones stated that he knocked on the door of the house, but no one answered. He slammed the front glass door, and it shattered. He then went to the side door, hit it with his left shoulder and it came open. Mr. Jones went to Ms. Bridges’ bedroom and used his shoulder to break it open. He stated that Keyondra willingly went outside with him and agreed to take him home. After going back inside to get her keys, Keyondra returned with a gun but did not point it at him. Mr. Jones stated that while he was trying to disarm her, he accidentally punched her in the face while trying to grab the gun, and she fell to the ground. Mr. Jones stated that he knew Keyondra would call the police, so he walked up the street to wait for the police to arrive. He acknowledged that as a convicted felon, he was | Bnot supposed to be in possession of a weapon. He claimed, however, that he took the gun to disarm her, taking the bullets out of the magazine and putting them in his right pocket while keeping the gun in his left pocket. He denied that he shot the weapon, or that it ever went off during the incident.
When the police arrived, Mr. Jones walked back to the house with his hands up and told the officers that that he had a gun, though he stood watching the police for twenty minutes before approaching the *863 house. He testified that he was trying to explain the situation to the police, but they did not give him a chance to say anything before placing him under arrest.
Keyondra’s grandmother, Ms. Emma Bridges, testified that on the night of the incident she was home in bed watching television. She heard her granddaughter come in and, a short time later, heard a loud noise. She thought her granddaughter had dropped something but then heard her granddaughter yelling, “He’s going to kill me” and telling her to call the police. She opened her bedroom door and saw a man taking her granddaughter down the hall, though she never saw his face.[4] Instead of calling the police, Ms. Bridges called Keyondra’s father and told him what was happening.
After the police arrived, Ms. Bridges saw an individual being arrested and heard him yelling as he was placed in the police car. She stated that the front glass door of her home was broken and that her side door was kicked in.
New Orleans Police Officer Gabriel Osborne was the first office to arrive at the scene that evening. She participated in the investigation and the subsequent arrest of Mr. Jones. She testified she first saw Mr. Jones in the Seventh District [ (¡parking lot earlier that night where Mr. Jones had asked to use her phone to make a call. She did not let him use it, but directed him to another location for a phone. According to her testimony, Mr. Jones never asked for a ride back to Sli-dell.
When she arrived at Ms. Bridges’ house, Officer Gabriel saw the broken front door. Upon further investigation, she observed that the side door to the residence and the door to Keyondra’s bedroom had been kicked in and noted further damage inside the residence. Officer Osborne observed that Keyondra had a laceration under her left eye, abrasions on her elbow, and scratches on her arms. Because Keyondra told the investigating officers that Mr. Jones shot a weapon, the officers searched the outside of the residence and found one spent casing in the driveway.
Approximately thirty minutes after Officer Gabriel and other officers arrived on the scene, Mr. Jones approached Officer Osborne, admitting that he had Keyon-dra’s gun. He approached Officer Osborne saying, “I’ll take my licks. I have her gun in my pocket.” Officer Osborne detained Mr. Jones and found the gun in his pocket with live rounds in it. When Mr. Jones was processed at Central Lockup, a live round was also discovered in another pocket.

ERRORS PATENT

A review of the record for errors patent reveals that the trial court failed to state that Mr. Jones’ sentences were to be served without the benefit of probation, parole or suspension of sentence. Louisiana Revised Statute 14:95.1 requires that the sentence for anyone convicted of being a felon in possession of a firearm must be served without the benefit of probation, parole or suspension of sentence. Louisiana Revised Statute 14:62.2 states that whoever is convicted of simple burglary of an inhabited dwelling “shall be imprisoned at hard labor for not less |7than one year, without benefit of probation, parole or suspension of sentence, nor more than twelve years.” However, Louisiana Revised Statute 15:301.1(A) self-activates the correction and eliminates the need to remand for a ministerial correction of the sentence. State v. Williams, 2000-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799.

*864
ASSIGNMENTS OF ERROR

1. The trial judge erred in failing to instruct the jury on the law of justification (self-defense) with regard to the offense of possession of a firearm by a convicted felon.
2. The jury, inadequately instructed as to the law, returned a verdict that is not supported by the evidence with regard to the offense of possession of a firearm by a convicted felon.
3. Trial counsel was ineffective in failing to submit to the court a special jury charge with regard to self-defense to the charge of possession of a firearm by a convicted felon and in failing to ask for reconsideration of the maximum sentence, thus precluding the issue from review on appeal.
4. The sentence imposed for the conviction of possession of a firearm by a convicted felon is excessive under the circumstances of this case.

DISCUSSION

FAILURE TO INSTRUCT THE JURY

In his first assignment or error, Mr. Jones contends that the trial court erred in failing to instruct the jury on the law of justification (self-defense) with regard to the offense of possession of a firearm by a convicted felon. For the reasons that follow, we find this assignment of error to be without merit.
Louisiana Code of Criminal Procedure article 807 provides that both the State and the defense have the right to submit proposed special jury charges to the court; that the charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent; and that the Ischarge need not be given if it is included in the general charge or in another special charge.
Thus, a trial judge is required to charge the jury, in response to an otherwise proper request, as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence. State v. Marse, 365 So.2d 1319, 1323 (La.1978). In the present case, defense counsel did not seek a special jury charge on the law of justification or object to the exclusion of such a jury charge. Thus, this assignment is not appropriate for review. La.C.Cr.P. articles 801, 841; State v. Allen, 592 So.2d 486 (La.App. 4 Cir.1991).

INSUFFICIENCY OF EVIDENCE

In his second assignment of error, Mr. Jones contends that the evidence was insufficient to prove that he was guilty of possession of a firearm by a convicted felon. He contends that necessitous circumstances existed which required him to take possession of the weapon. Specifically, he claims that he took possession of the gun to prevent Keyondra from using it on him. Thus, he contends, his possession of the weapon was justified.
In reviewing a claim of insufficiency of evidence, courts must apply the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must determine whether the evidence, viewed in the light most favorable to the prosecution, “was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Batiste, 2006-0875, p. 7 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 814; State v. Sykes, 2004-1199, p. 6 (La.App. 4 Cir. 3/9/05), 900 So.2d 156, 161. In addition, when the State uses circumstantial evidence to prove the elements of the offense, “assuming every fact to be proved that the *865 evidence tends to prove, in order to convict, it must exclude 19every reasonable hypothesis of innocence.” La. R.S. 15:438; State v. Neal, 2000-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657.
Louisiana Revised Statute 14:18 sets forth the general provisions for justification: “The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct.”
In State v. Blache, 480 So.2d 304 (La.1985), the Louisiana Supreme Court recognized that a defense of justification is available to a defendant charged with being a felon in possession of a firearm. The court explained that such a defense is available when the felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, such that he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such a situation, justification is a defense. Blache, 480 So.2d at 308.
In State v. Cheatwood, 458 So.2d 907 (La.1984), the Supreme Court addressed the issue of the burden of proof when justification is offered as a defense. Does the State have the burden of proving there was no justification or does the defendant have the burden of proving that he was justified in committing the crime with which he is charged?
In Cheatwood, the defendant was convicted of criminal neglect of his family. He and his wife divorced and he was ordered to pay child support. He quickly fell behind in his support payments and was ordered into court pursuant to a civil proceeding to have the amount of past due support determined and made executory. After judgment was rendered against him and he still did not pay in |inaccordance with the judgment, Mr. Cheatwood was charged with criminal neglect of family in accordance with La. R.S. 14:74 and found guilty as charged. At trial and on appeal, Mr. Cheatwood presented evidence that he suffered from a back injury, was disabled and was unable to meet his financial obligation. In discussing this defense, the Supreme Court first noted that except in a few instances, Louisiana statutes do not set forth who has the burden of proof for defenses. The Court differentiated defenses such as intoxication and mistake of fact, which negate an element of the offense, from defenses such as justification, which the court found to be an affirmative defense that does not negate an element of the recognized offense. The Court stated: In this case, “Since justification’ defenses are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused’s conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of evidence.” Cheatwood, 458 So.2d at 910. In a footnote, the Court further stated:
It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of the offense and to require defendant to prove by preponderance of evidence the exculpatory circumstances constituting the “affirmative” defense. See W. Lafave & A. Scott, Criminal Law § 8 (1972). The statutory provisions setting forth the state’s burden of proof refer only to the requirement that the state prove the elements of the crime-not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense. See La. R.S. 15:271; La.C.Cr.P. art. 804; former La.C.Cr.P. arts. 263 and 387 (1928).
*866 See also State v. Freeman, 427 So.2d
1161 (La.1983), Lemmon, J., concurring. Id. at 910 n. 4. The Court then found that the defendant had met his burden of proving his affirmative defense by a preponderance of the evidence.
In State v. Wischer, 2004-0325, pp. 8-9 (La.App. 4 Cir. 9/22/04), 885 So.2d 602, 606-607, a divided panel of this court adopted Cheatwood and held that in a non-homicide case, the defendant has the burden of showing by a preponderance of the evidence that the crime was committed in self-defense. One judge concurred, finding that the evidence was sufficient to support the defendant’s conviction, but he disagreed with the majority as to which party has the burden of proof as to a self-defense claim, and he found that the facts of the case did not warrant this Court making this determination. Id., 2004-325, p. 11, 885 So.2d at 608.
After Wischer, this court has on numerous occasions discussed this issue and recognized that it is an unsettled area of law. See, State v. Cooks, 2011-0342, pp. 11-12, (La.App. 4 Cir. 12/14/11), 81 So.3d 932, 939-940. In this case, we find it unnecessary to resolve the issue. The record supports a finding by the jury that the State proved, beyond a reasonable doubt, that Mr. Jones was not justified in his possession of the firearm.
In State v. Grant, 414 So.2d 373 (La.1982), the defendant contended that he took possession of a gun after his aunt had removed it from her purse during some type of disturbance. As the defendant was taking the weapon outside to place it in his truck, a police officer arrived in response to the call of a disturbance at the residence. The officer later testified that there was a great deal of commotion and accusations being thrown back and forth between several people, including the defendant. When the officer asked the defendant if he was armed, the defendant removed the gun from his rear pocket. At trial, the defendant’s aunt testified for the defendant that the gun was hers and that she had been upset at the time of the incident. However, she also testified that, by the time the police arrived, the defendant and another man were moving a piece of furniture out of the residence. l12In upholding the defendant’s conviction for violating Louisiana Revised Statute 14:95.1, the Court noted that the testimony of the defendant’s aunt established that the defendant had ample time to turn the gun over to another person or otherwise remove it from his person. Therefore, he could not rely on a justification defense. Id. at 374.
In State v. Jones, 539 So.2d 866 (La.App. 4 Cir.1989), the defense witnesses claimed that three men attempted to rob the defendant’s fiancée when she was making a call at a pay phone. She was able to retrieve her pistol from her purse and send her child to get the defendant who was nearby. The would-be robbers fled when the defendant’s fiancée held her gun on them and the defendant came to her aid. While the fiancée called the police, her purse and its contents, including the gun, ended up on the ground, at which time the defendant began picking everything up. The defendant had the gun in his hand when he flagged down the police, who arrested him. The police officers testified that they went to the location of the defendant’s arrest in response to a call that a man was waving a gun around. According to the police, when they arrived the defendant had the gun concealed in a holster in his belt. On appeal, this Court concluded that, even accepting the defendant’s version of the facts, he was not in imminent danger when he possessed the firearm, and thus he was not entitled to a *867 jury instruction on self-defense. Jones, 539 So.2d at 868.
In State v. Jackson, 452 So.2d 776, 779 (La.App. 4 Cir.1984), this Court recognized that “Necessity’, when raised as a defense to the illegal possession of a firearm, entails proof that the threat of force by another is imminent and apparent, and that the person threatened has no reasonable alternative but to possess the firearm.” (Emphasis in the original).
113In the present case, while the testimony of Mr. Jones and victim differed as to how he obtained possession of the weapon, all the testimony supports the finding that Mr. Jones maintained possession of the weapon after the victim ran back into the house. At that point, even accepting Mr. Jones’ testimony, he was no longer faced with an imminent and apparent threat which necessitated his possession of the weapon. Officer Osborne testified that Mr. Jones did not approach her until she had been on the scene for thirty minutes. Thus, when Mr. Jones was found to be in possession of the weapon, there was no reasonable justification for his possession of the weapon. Mr. Jones could have disposed of the weapon at any time. The evidence presented does not support a finding of justification or self-defense as argued by Mr. Jones. This assignment of error is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL

In this third assignment of error, Mr. Jones asserts a claim for ineffective assistance of counsel on two grounds: (1) failure to request a special jury charge on self-defense and (2) failure to file a motion to reconsider sentence. A review of the trial record reveals that defense counsel did file a motion to reconsider sentence, which was denied by the trial court. Therefore, we will only address the claim that defense counsel was ineffective for failing to request a special jury charge on self-defense.
A claim of ineffective assistance of counsel is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192, p. 24 (La.9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001); State v. Seiss, 428 So.2d 444, 449 (La.1983). A claim of ineffectiveness of counsel is analyzed under the twojprongedu test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In State v. Miller, 2000-0218, pp. 6-7 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 110-111, this Court discussed the Strickland two-part test relating to an ineffective assistance of counsel claim stating that the defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. Miller, 2000-0218, p. 7, 792 So.2d at 111; State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
*868 If an error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986); State v. Marino, 2000-1131, p. 12 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 56. An attorney’s level of representation may not be determined by whether a particular strategy is successful. Marino, 804 So.2d at 56, citing State v. Brooks, 505 So.2d 714, 724 (La.1987).
11fiUnder Louisiana Code of Criminal Procedure article 802, a trial court shall charge the jury:
(1) As to the law applicable to the case;
(2)That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
As stated earlier in this opinion, pursuant to Louisiana Code of Criminal Procedure article 807, the State and the defense shall have the right to submit to the court requests for special written charges for the jury.[5] Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Marse, 365 So.2d 1319, 1324 (La.1978); State v. Tate, 2001-1658, p. 20 (La.5/20/03), 851 So.2d 921, 937; see also La.C.Cr.P. art. 921.
The Supreme Court, in State v. Miller, 338 So.2d 678, 681 (La.1976), stated that an instruction on justification must be given whenever the defense is arguably supported by the evidence presented at trial, because “the question is not what the judge believed the evidence proved, or even what view this Court has of the evidence. The question is, instead, what the jury would believe the evidence established if they had been instructed on the law of justification.”
As discussed in the previous assignment of error, there was no evidence to support Mr. Jones’ argument of justification or self-defense. Even accepting the testimony favorable to Mr. Jones, there was no evidence to suggest that Mr. Jones |1fiwas in any imminent harm or danger when Officer Osborne found him in possession of the weapon. More than thirty minutes had elapsed from the time the police arrived at the residence in response to the 911 call to the time that Mr. Jones returned to the scene. As such, the evidence did not support the giving of a jury instruction on the issue of justification or self-defense in response to the charge of being a felon in possession of a weapon. Trial counsel was not ineffective for failing to request such a jury charge.
This assignment of error is without merit.

EXCESSIVENESS OF SENTENCE

Finally, Mr. Jones argues that his sentence for possession of a firearm by a convicted felon was excessive under the circumstances of his case. At time of the offense, the sentencing range provided in Louisiana Revised Statute 14:95.1 was ten to fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence and a fine of one thousand *869 dollars to five thousand dollars. The trial court sentenced Mr. Jones to the maximum sentence of incarceration available under the statute of fifteen years at hard labor and the minimum fine of one thousand dollars.
Louisiana Constitution article I, § 20 explicitly prohibits excessive sentences. State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Burton, 98-0096, pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 79 (Citation | 17omitted). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982, p. 9, 656 So.2d at 979; State v. Hills, 98-0507, pp. 4-5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
Louisiana Code of Criminal Procedure article 881.4(D) provides that if the record supports the sentence imposed, the appellate court shall not set aside a sentence for excessiveness. In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in Louisiana Code of Criminal Procedure article 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Soco, 441 So.2d 719, 720 (La.1983). If adequate compliance with Louisiana Code of Criminal Procedure ar-tide 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. See also: State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
In State v. Soraparu, 97-1027, p. 1 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated that the relevant question in an appellate review of sentence is “‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
In the present case, the trial court did not specifically state her reasons for the sentences imposed. However, the record supports the conclusion that the trial court considered the factors of article 894.1 in determining the sentences to be imposed. The trial court heard all the evidence adduced at trial, during which Mr. Jones admitted to having prior convictions for possession of cocaine, possession with the intent to distribute cocaine and distribution of cocaine. In fact, the offenses in the present case occurred only a few months after he was released from jail for his conviction for distribution of cocaine. The trial court was aware of the manner in which Mr. Jones took the weapon from the victim and the injuries he inflicted upon her. The trial court also heard evidence of how Mr. Jones attempted to maintain correspondence with the victim even though the victim did not encourage it. Additionally, the trial judge noted that Mr. Jones *870 threatened the victim after his conviction and that she personally heard Mr. Jones curse and threaten the victim in court.
In light of Mr. Jones’ prior convictions, the timing of these offenses following his release from jail, the violent nature of these convictions, and his behavior toward the victim at trial, the trial court did not abuse its wide discretion in sentencing Mr. Jones to fifteen years at hard labor on the charge of being a felon in possession of a weapon. This assignment is without merit.

CONCLUSION

For the foregoing reasons, we affirm Mr. Jones’ convictions and sentences.
AFFIRMED

. The victim is referred to by her first name as her grandmother, Mrs. Emma Bridges, was also a witness in these proceedings.

. Keyondra testified that Mr. Jones did not have a cell phone.

. Stephanie Briscoe is a senior police dispatcher with the New Orleans Police Department. She identified the 911 audio tape and transcript of the call received from Keyondra on November 11, 2009. The 911 tape was played for the jury.

. Ms. Bridges was unable to identify Mr. Jones at trial.

. Article 807 further states that "[a] requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.”